**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| WILLIAM P. FUSON | : | |
| Plaintiff, | : | |
| | | Case No. 3:07CV182 |
| vs. | : | |
| | | District Judge Walter H. Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

**I.    INTRODUCTION**

For many years, Plaintiff William P. Fuson performed assembly work for General Motors Corporation. (Tr. 59, 133-135). He injured himself at work in 1997 and stopped working. Since that time he has suffered from chronic pain in his back and other physical and mental ailments. (Tr. 371-74).

In March 1999 Plaintiff turned to the Social Security Administration for assistance by applying for Disability Insurance Benefits (DIB). He claimed that he became disabled on February 17, 1997. The Commissioner, (through Administrative Law Judge (ALJ) Daniel R. Shell, denied Plaintiff's DIB application. (Tr. 33-49). That decision – issued

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

on February 7, 2002 – was later affirmed in a prior case brought by Plaintiff in this Court. *Fuson v. Barnhart*, 3:02cv0248 (S.D. Ohio)(Rose, D.J.; Merz, M.J.).

      Plaintiff next filed a second DIB application asserting that was under a disability beginning on February 8, 2002 and continuing through December 31, 2002, the date his insured status expired for DIB qualification purposes.  After initial administrative denials, ALJ Melvin A. Padilla held two hearings and later denied Plaintiff's second DIB application by concluding that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act.  (Tr. 24).  ALJ Padilla's non-disability determination and his resulting decision to deny Plaintiff's second DIB application became the final decision of the Social Security Administration.  Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

      This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), the administrative record, and the record as a whole.

      During ALJ Padilla's first hearing, Plaintiff's counsel verbally amended the claimed disability onset date to July 1, 2002.  (Tr. 368).  Plaintiff therefore seeks an Order overturning ALJ Padilla's decision and granting him DIB from July 1, 2002 through December 31, 2002.  The Commissioner seeks an Order affirming the ALJ's decision.

## II. FACTUAL BACKGROUND

### A. Preliminary Information

The main issue before the ALJ was limited to whether Plaintiff was under a disability from February 8, 2002 through December 31, 2002. Plaintiff's application sought DIB benefits from his claimed date of disability onset, February 8, 2002, to December 31, 2002, the date he last met the insured-status qualifications for DIB. (Tr. 87).

Plaintiff was fifty-four years old on the date of his alleged disability onset, placing him in the category of a "closely approaching advanced age" for purposes of resolving his disability claim. *See* 20 C.F.R. §404.1563. He turned age fifty-five in July 2002 and was thereafter in the category of "advanced age" for the remaining months of 2002. *See* 20 C.F.R. §404.1563.

Plaintiff completed school through the seventh grade.

### B. Plaintiff's Testimony

Plaintiff testified during both of the ALJ's administrative hearings. (Tr. 364-417). Plaintiff explained that he had a driver's license and drove about two times a week. (Tr. 370). His previous job with General Motors Corporation did not require lifting, but he did at times pull items weighing about fifty pounds. (Tr. 387). His job also required him to be on his feet for ten hour shifts, four days a week. (Tr. 388).

Plaintiff testified that if he walked very much, he needed to sit down. (Tr. 372).

Plaintiff explained that his during 2002, Dr. Corcoran was his family physician. (Tr. 376). Dr. Corcoran treated Plaintiff for over twenty years. (Tr. 376-77). Plaintiff further explained that he suffers from depression, for which Dr. Corcoran has prescribed anti-depressants. (Tr. 378-79). Plaintiff testified, "Well, after I got hurt and couldn't come to work and I was used to working there since I was 17 years old and it just, it just bothers you when I can't do nothing, ...can't do, you know, you can't do nothing...." (Tr. 379). He has not received mental health counseling. (Tr. 380). Dr. Corcoran told him at one time not to lift over five pounds. (Tr. 383).

As to his work abilities during 2002, Plaintiff testified that he could work about an hour and one-half to two hours before needing to take a break due to back and hip pain. (Tr. 381). In addition, if he was standing for this long, his leg would start burning. (Tr. 381). Sitting would help ease these problems but he could not sit for long before needing to stand or move around. If he kept changing positions, he could sit for about an hour. (Tr. 382). Plaintiff did not have problems climbing stairs. (Tr. 383). His household activities included some cooking, washing dishes, and mopping, but he did not do these things very often and he needed to take breaks. (Tr. 383-384).

Plaintiff described the pain in his back as a real sharp. (Tr. 394). He believed it has only gotten worse over time. He took pain pills up to three times a day. (Tr. 389). He continued to have spasms down his left leg if he bent over or twisted his back. (Tr. 390).

### C. Other Records

The parties have provided detailed and informative descriptions of Plaintiff's medical records supported with many specific citations to evidence of record. *See* Doc. #8 at 5-15; Doc. #10 at 4-5. Some highlights from Dr. Corcoran's records, Dr. Danopulos' report, and Dr. Duritsch's report will help frame further review.

Plaintiff relies primarily on the opinions and records of Dr. Corcoran. Dr. Corcoran's records reflect treatment going back to 1994. Prior to his work injury in 1997, Plaintiff had an EMG in 1994 which revealed mild C5-6, radiculopathy. (Tr. 315). Plaintiff's medical records document his frequent reports of chronic back strain and pain. (Tr. 254, 254, 256, 267, 269, 273-74, 278-81, 283-87, 289-93).

During the time period (July 1, 2002 through December 31, 2002) at issue in this case, Plaintiff saw Dr. Corcoran six times for sinusitis, increased depression, anxiety, difficulty breathing, right shoulder pain. (Tr. 256-58). Once during this period, in November 2002, Dr. Corcoran noted his diagnostic impression of "chronic back pain." (Tr. 256).

In February 2004, Dr. Corcoran noted, "chronic lumbar strain – unchanged." (Tr. 246-47).

Plaintiff also relies on the opinion of Dr. Danopulos, who examined Plaintiff on one occasion (on July 2, 2001) for the Ohio Bureau of Disability Determination. (Tr. 185-89). Plaintiff gave a history of suffering from low back pain for the last four years after he injured his low back. Prior x-ray and MRI reveal bulging discs. (Tr. 185). Dr.

5

Danopulos' examination revealed normal ranges of motion on the left shoulder but these motions were painful. Dr. Danopulos also observed that Plaintiff's lumbosacral spine was painful to pressure. The straight leg raising was positive at forty degrees level bilaterally and lumbar sprain motions were highly restrictive and painful. The lumbar x-rays revealed mild degenerative changes. The cervical spine was painful by palpitation and motions were normal but painful. Dr. Danopulos identified his objective findings as (1) lumbar spine degenerative disc disease with chronic pain, (2) cervical spine arthralgias, (3) left shoulder post surgical mild arthritis, (4) well controlled hypertension, and (5) anxiety/depression. Dr. Danopulos concluded that Plaintiff's ability to do any work-related activities is mainly restricted by the lumbar spine and left shoulder condition plus anxiety neurosis and depression. (Tr. 189).

  The Commissioner relies on an August 2005 report by one-time examining physician Dr. Duritsch. (Tr. 327-35). Dr. Duritsch reviewed the records of Plaintiff's July 2001 MRI, a right shoulder x-ray in September 2002, and an EMG report of April 2003. (Tr. 327). Dr. Duritch also examined Plaintiff. He observed that Plaintiff was able to walk easily from the waiting area, he was able to stand on toes/heels with 5/5 strength, his simulated truncal rotation increased his symptoms, and he had myofascial tightness and tenderness to palpation. (Tr. 328). According to Dr. Duritsch, Plaintiff's lower back pain was likely secondary to chronic lumbosacral strain, possibly minimal degenerative changes. *Id.* He opined that Plaintiff could lift up to thirty pounds occasionally and

6

twenty pounds frequently, and Plaintiff had no limitations in his ability to stand, walk, or sit. *Id*.

As will be seen, ALJ Padilla fully credited Dr. Duritsch's opinions to determine that new and additional evidence showed improvement in Plaintiff's back impairment and work abilities. *Infra*, §IV(B)-(C). In doing so, ALJ Padilla discounted the opinions of Dr. Klyop, who reviewed Plaintiff's medical records and concluded that he could perform medium exertional work. *See* Tr. 22, 316-18.

### III.  ADMINISTRATIVE REVIEW

#### A.  <u>Defining A "Disability" And The ALJ's Sequential Evaluation</u>

The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).[2]

Social Security Regulations require ALJs to resolve whether a claimant is under a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review,

---

[2] Other DIB eligibility requirements are not at issue in this case. *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

*see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential evaluation answers five questions:

    1.       Is the claimant engaged in substantial gainful activity?

    2.       Does the claimant suffer from one or more severe impairments?

    3.       Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4.       Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5.       Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

    **B.**    **ALJ Shell's Decision**

During the administrative proceedings concerning Plaintiff's first DIB application, ALJ Shell found that Plaintiff suffered from the severe impairments of "mild degenerative abnormalities of the lumbar spine with chronic underlying spinal sprain and strain, borderline intellectual functioning, and a reading disorder...." (Tr. 47). ALJ Shell assessed Plaintiff's Residual Functional Capacity as follows:

> The claimant is capable of performing the basic exertional activities of associated with light work as such work is defined for Social Security purposes. The claimant can lift as much as 20 pounds occasionally and 10 pounds frequently. He should not be expected to stand or to walk more than a total of two hours during any given eight-hour work day. He could be permitted to alternate between sitting and standing after as much as one

> hour in any position. The claimant should not be expected to climb, to balance, or to work at heights in the performance of job duties. The claimant should not be expected to kneel more than occasionally. He is restricted to performing essentially unskilled job duties which do not involve reading or writing....

(Tr. 48). Based on these findings as well as his findings at each Step of the sequential evaluation, ALJ Shell concluded that Plaintiff was not under a disability. (Tr. 47-49).

Plaintiff's was between fifty and fifty-four years old at the time relevant to ALJ's decision. His age thus placed him in the category of a person "closely approaching advanced age" for social security purposes. (Tr. 48).

Having aged into the category of "advanced age" (in July 2002), the Commissioner later concluded, when denying Plaintiff's second DIB application, that he was capable of performing medium exertional work. This finding arose in ALJ Padilla's decision.

### C. ALJ Padilla's Decision

Early in ALJ Padilla's Decision, he acknowledged that ALJ Shell had previously found Plaintiff only able to perform limited range of light work. (Tr. 14). He noted, however, that the administrative record before him contained new and material evidence. (Tr. 14). The new and material evidence led ALJ Padilla to conduct his sequential evaluation as follows

At Step 2, ALJ Padilla found that Plaintiff suffered from mild lumbar degenerative disc disease and borderline intellectual functioning with limited academic skills or possible reading disorder but no other severe impairment. (Tr. 17).

9

At Step 3, ALJ Padilla concluded that Plaintiff did not suffer from a listing-level impairment. (Tr. 20).

When assessing Plaintiff's Residual Functional Capacity at Step 4, ALJ Padilla found that Plaintiff could perform a reduced range of medium exertional work.[3] He explained:

> After careful consideration of the entire record, the undersigned finds that the claimant, during the period at issue (February 8, 2002 through December 31, 2002) could lift up to thirty pounds occasionally and twenty pounds frequently; climbing, stooping, crouching were limited to occasionally; balancing, kneeling, and crawling were limited to frequently; he was limited to unskilled, simple tasks with verbal instructions not involving any reading or writing. The residual functional capacity, therefore, is for a reduced range of medium exertion work.

(Tr. 21).

This assessment, along with ALJ Padilla's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and hence not eligible for DIB. (Tr. 16-24).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a

---

[3] The Regulations define medium work as involving the ability to lift "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567(c).

conclusion.'"  *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)).  It consists of "'more than a scintilla of evidence but less than a preponderance...'"  *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential not *de novo*.  *See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record, if other substantial evidence supports the ALJ's findings.  *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, reviewing the administrative record for substantial supporting evidence is not the stopping point of judicial analysis.  Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria.  *See Bowen*, 478 F.3d at 746.  If the ALJ does not, the decision may not be not upheld even when substantial evidence supports the ALJ's findings.  *See id*.  A decision will not be upheld, for example, where the ALJ failed to follow apply the standards mandated by Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right.  *See Bowen*, 478 F.3d at 746 (and cases cited therein).

Understanding ALJ Padilla's decision also includes, as Plaintiff emphasizes, *see* Doc. #8 at 19, the knowledge that if ALJ Padilla had agreed with ALJ Shell's finding that Plaintiff could only perform a limited range of light work, this RFC along with his age

(fifty-five in July 2002), and educational/vocational level, the Commissioner's "Grids" would have mandated the conclusion that Plaintiff was under a "disability."  *See* Medical-Vocational Guidelines, 20 C.F.R. Subpart P, Appendix 2, §202.01

## V. DISCUSSION

### A. The Parties' Contentions

Plaintiff contends that the ALJ erred by rejecting the records and opinions of Dr. Corcoran, his long-term treating physician, and by crediting the opinion of Dr. Duritsch, a one-time examining physician.  Plaintiff argues that Dr. Duritsch failed to provide medical findings to support his assessment that Plaintiff had no limitations on his ability to sit, stand, walk, and perform other work activities and that Dr. Duritsch's conclusions are not consistent with his finding that (1) truncal rotation and axial loading of the head increases Plaintiff's lower back pain, and (2) Plaintiff has myofascial findings in the lumbar region with limited range of motion in the lumbar region.  (Doc. #8 at 18). Plaintiff emphasizes that the ALJ erred by relying on Dr. Duritsch's opinion provided in August 2005, three years after the pertinent 2002 time period.

The Commissioner argues that the ALJ properly assessed Plaintiff's residual functional capacity at a limited range of medium work because his medical records do not document any acute or serious complication to Plaintiff's back impairment during the relevant February-to-December 2002 time period; because Dr. Corcoran's records lack

such documentation; and because later evaluations by a state agency physician, Dr. Klyop (Tr. 316-18) and Dr. Duritsch supported the ALJ's decision. (Doc. #10 at 4-5).

**B.    Analysis**

In *Drummond v. Comm'r. of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), the United States Court of Appeals for the Sixth Circuit held, "the principles of res judicata can be applied against the Commissioner.  When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id*. at 842 (citations omitted). "Absent evidence of improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id*.  Under *Drummond*, "The burden is on the Commissioner to prove changed circumstances and therefore escape the principles of res judicata." *Id*. at 843.  To avoid being bound to an earlier decision, the Commissioner must present substantial evidence showing that the claimant's condition has significantly improved. *Id*.

Applying res judicata in *Drummond*, the Court of Appeals held that the Commissioner was bound to the prior conclusion that claimant had the RFC to perform sedentary work because the Commissioner did not produce substantial evidence showing that claimant's condition had improved significantly. *Id*.  Thus, given the claimant's age (closely approaching advanced age) and sedentary RFC, the Court found her entitled to DIB under the Commissioner's Regulations. *Id*.

13

After *Drummond*, the Commissioner issued an Acquiescence Ruling mandating ALJs in Ohio (and other states within the Sixth Circuit) to follow *Drummond* by applying res judicata to prior assessment of a claimant's RFC and other prior findings made as part of a sequential evaluation. The Commissioner explained:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law....

AR 98-4(6), 1998 WL 283902 (June 1, 1998).

In the present case, the Commissioner is bound by ALJ Shell's assessment of Plaintiff's RFC for light work unless the Commissioner presents substantial evidence showing that Plaintiff's condition improved significantly during the relevant time period. *See Drummond*, 126 F.3d at 842-43. In an attempt to show improvement in Plaintiff's condition, the Commissioner relies on Dr. Duritsch's opinion.

A review of Dr. Duritsch's report reveals that it does not constitute substantial evidence supporting the conclusion that Plaintiff's back impairments improved during the relevant 2002 time period for several reasons.

First, Dr. Duritsch based his opinion in part on the review of prior medical evidence – a 2001 MRI of Plaitniff's lumbar spine – which led ALJ Shell to conclude that Plaintiff could perform light work. *See* Tr. 327. To the extent Dr. Duritsch opinion is based on his different view of that pre-2002 evidence, his opinion is not probative of

whether Plaintiff's back condition significantly improved after ALJ Shell's decision, during the relevant 2002 time period at issue in this case. Second, Dr. Duritsch considered an April 2003 EMG of Plaintiff's back. (Tr. 327). Although this EMG post-dated ALJ's Shell's decision, it also post-dated the relevant time period, which ended on December 31, 2002. It is thus not probative of whether Plaintiff's back condition significantly improved during the relevant 2002 time period. Third, Dr. Duritsch did not explain in his report that any of the objective evidence he reviewed or the subjective tests he also considered, *see* Tr. 327-28, led him to conclude that Plaintiff could perform medium work during the relevant 2002 time period. *See id.* Dr. Duritsch, moreover, wrote his opinions in the present tense – present to the time the report was written in August 2005 – without qualification or a specific opinion concerning Plaintiff's condition in 2002. *See* Tr. 327-28.

     Given these aspects of Dr. Duritsch's report, the most that can be reasonably accepted is Dr. Duritsch's opinion that Plaintiff's back condition had improved in August 2005 to the point where he could perform medium work. *See* Tr. 327-28. Nothing in the report provides a basis for extending that conclusion back in time to 2002, *see id.*, and consequently, Dr. Duritsch's report could not lead a reasonable mind to conclude that Plaintiff's back condition had significantly improved during the relevant 2002 time period. Dr. Duritsch's report, therefore, does not constitute substantial evidence in support of the conclusion that Plaintiff's back condition had significantly improved during the relevant 2002 time period. *See Drummond*, 126 F.3d at 840 ("'Substantial

evidence' is 'such relevant evidence as a reasonable mind might accept as adequate to support conclusion.'").

The Commissioner also relies on the opinions provided by a state agency record reviewer, Dr. Klyop. (Doc. #10 at 5). Dr. Klyop opined in February 2004 that Plaintiff could perform medium exertional work without limitation. (Tr. 316-19). Dr. Klyop's opinion, however, does not assist the Commissioner for the simple reason that ALJ Padilla specifically determined that greater weight should be placed on Dr. Duritsch's opinions than on Dr. Klyop's opinion. *See* Tr. 21.

ALJ Padilla provided several additional reasons in support of his assessment of Plaintiff's RFC at a limited range of medium work. Each these reasons, however, have exactly the opposite impact than ALJ Padilla believed because his reasons reveals that the Commissioner has not produced evidence of significant improvement in Plaintiff's condition. ALJ Padilla found, for example, "there is no other physical capacity assessment since the date of the prior decision or medical opinions to the effect that claimant was disabled from February 2002 through December 2002." (Tr. 21). In contrast to ALJ Padilla's conclusion, the absence of such evidence means that the Commissioner has not met his burden of producing substantial evidence tending to show significant medical improvement. *See Drummond*, 126 F.3d at 842-43 (placing the burden on the Commissioner to produce such evidence). Without such evidence, the Commissioner is bound to ALJ Shell's prior final assessment of Plaintiff's RFC for a limited range of light work. *See id*.

16

Accordingly, Plaintiff's contentions regarding ALJ Padilla's assessment of his RFC are well taken.

## VI.  REMAND FOR PAYMENT OF BENEFITS IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991); *see Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is warranted in the present case, because res judicata applies to ALJ Shell's prior assessment of Plaintiff's Residual Functional Capacity at a limited range of light exertional work.  Given that prior RFC finding, Plaintiff's age on his amended claimed disability onset date of July 1, 2002 (Tr. 368), and his vocational abilities, Grid Rule 202.01 requires the conclusion that he was under a disability during the relevant 2002 time period.  *See* Medical-Vocational Guidelines, 20 C.F.R. Subpart P, Appendix 2, §202.01

Accordingly, the case should be remanded to the Social Security Administration for an award of DIB to Plaintiff for the relevant 2002 time period.  *See Drummond*, 126 F.3d at 843.

17

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's decision that Plaintiff is not disabled and therefore not entitled to benefits under the Act be reversed.

2. This matter be remanded to the Social Security Administration for the payment of benefits consistent with the Social Security Act from July 1, 2002 through December 31, 2002; and

3. The case be terminated on the docket of this Court.


July 23, 2008                                          s/ Sharon L. Ovington  
                                                                                     Sharon L. Ovington  
                                                                      United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

  Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Am,* 474 U.S. 140 (1985).